IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.), an individual; PMN II, LLC, a Delaware limited liability company, | MEMORANDUM DECISION AND ORDER |
| **Plaintiffs,** | |
| v. | Case No. 2:11-cv-00091-TS |
| FORT KNOX SECURITY PRODUCTS, INC., a Utah Corporation, | Chief District Judge Ted Stewart |
| **Defendant.** | Magistrate Judge Paul M. Warner |

This matter was referred to Magistrate Judge Paul M. Warner by Chief District Judge Ted Stewart pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Fort Knox Security Products, Inc.'s ("Defendant") Motion for a Protective Order.[2] The court has carefully reviewed the motion and memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

## BACKGROUND

Defendant has filed a motion for a protective order, objecting to a number of document requests served on it by General Charles E. "Chuck" Yeager (Ret.) ("General Yeager") and PMN II, LLC (collectively, "Plaintiffs"). Specifically, Defendant moves this court to prohibit the discovery of Request Nos. 57–79 of Plaintiffs' Second Set of Requests for Production. In brief,

---

[1] *See* docket no. 21.

[2] *See* docket no. 19.

Defendant argues that Plaintiffs should not be allowed to "conduct a fishing expedition into

confidential, proprietary financial information of Fort Knox before they have established an

entitlement to this information."[3]  Plaintiffs' claims are based on the alleged breach of an oral

agreement whereby Defendant "was permitted to associate General Yeager's name and likeness

with its safes," with the arrangement that General Yeager would be compensated.[4]  Plaintiffs

contend that:

> [B]eginning in or around 2009, it became apparent . . . that [Defendant]
> had continually underreported aggregate annual sales of safes promoted
> using General Yeager's name or likeness. . . . [and] that [Defendant] led
> General Yeager to believe that the profits realized from the sales of safes
> promoted using his name or likeness would also be earmarked and
> dedicated for charitable causes.[5]

Plaintiffs further assert that "[r]equests No. 57 through 74 seek production of sales

records reflecting sales of [Defendant's] safes during the relevant time period – January 1, 1985

to the present.  Requests No. 75 through 79 seek production of records reflecting charitable

contributions made by or on behalf of [Defendant]."[6]

In this motion, Defendant contends that "Plaintiffs are . . . using discovery to seek

confidential, proprietary documents . . . despite the fact that they have not proven that an

enforceable contract exists."[7]  Defendant asserts that Plaintiffs should not be allowed to "conduct

a fishing expedition into [Defendant's] financial records and dealings for the past 27 years unless

---

[3] Docket no. 20 at 2.

[4] Docket no. 2 at 7.

[5] Docket no. 23 at 3.

[6] *Id.*

[7] Docket no. 20 at 2.

Plaintiffs can prove the existence of an enforceable contract with terms that entitle them to this information."[8]

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure affords "[f]ederal district courts [with] broad discretion over discovery." *Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661, 662 (D. N.M. 2005). It is well established, that "the deposition-discovery rules are to be accorded a broad and liberal treatment. . . . Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the general scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).

However, while the various discovery rules "are to be accorded a broad and liberal treatment . . . limitations come into existence when the inquiry touches upon the irrelevant." *Hickman,* 329 U.S. at 507–508.  As a general rule, "[r]elevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecomm.*, 137 F.R.D. 25, 27 (D. Kan. 1991).  Further, relevancy does not hinge

---

[8] *Id.*

on whether the information is admissible at the trial, as long as it appears "reasonably calculated

to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

"The party resisting the discovery bears the burden of establishing lack of relevance. . . ."

*Aramburu v. Boeing Co.*, No. 93-4064-SAC, 1994 WL 810246, at *1 (D. Kan. Sept. 22, 1994).

As noted above, Rule 26(b)(2)(C) imposes certain limitations on discovery.  The court must limit

discovery if it determines:

> (i) the discovery sought is unreasonably cumulative or duplicative, or
> can be obtained from some other source that is more convenient, less
> burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely
> benefit, considering the needs of the case, the amount in controversy, the
> parties' resources, the importance of the issues at stake in the action, and
> the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

If the court finds that one of the above factors is met, the court has "broad discretion to

tailor discovery narrowly."  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

## DISCUSSION

As stated above, Defendant objects to Requests Nos. 57–79 of Plaintiffs' second set of

document requests.  The court has separated the requests into two groups and will address each

group in turn.

### (1) Request Nos. 58, 59, 61, 62, 64, 65, 67, 68, 70, 71, and 73–77

In Request Nos. 58, 59, 61, 62, 64, 65, 67, 68, 70, 71, and 73–77, Plaintiffs have

narrowed their requests to an appropriate subject-matter, namely, any and all documents that

relate to the "Yeager Series" line of safes and sales of all Fort Knox Safes that Defendant

promoted using General Yeager's name and/or likeness from January 1, 1985 to the present.

Specifically, Nos. 58, 61, 64, 67, 70 and 73 request all financial reports and sales records related

to the sale of Fort Knox Safes that were promoted using General Yeager's name and/or likeness.

Nos. 59, 62, 65, 68, 71, and 74 request all financial reports and sales records related to the sales

of all Fort Knox Safes "where, in conjunction with such sales, [Defendant] provided the buyer(s)

or recipient(s) with one or more [signed] copies of [General Yeager's] Autobiography."[9]  Lastly,

Nos. 75–77 request all documents that reflect discussions of contributions or actual contributions

made by Defendant or any of its directors, officers or employees to any charitable, philanthropic,

or not-for-profit entity on behalf or in the name of General Yeager.

As noted above, Defendant asserts that Plaintiffs must first prove the existence of an

enforceable contract before it is obligated to produce the requested documents.  However, if that

were true, all cases would necessarily be bifurcated.  Under the rules, proving the existence of a

contract is not a prerequisite to obtaining discovery.  The damages phase of discovery has not

been bifurcated from the liability phase of discovery in this matter.  The discovery rules are

necessarily broad in order to help clarify the issues for trial.  *See Gomez v. Martin Marietta

Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) ("[T]he scope of discovery under the federal rules is

broad and . . . 'discovery is not limited to issues raised by the pleadings, for discovery itself is

designed to help define and clarify the issues.'" quoting *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340, 351 (1978)).

This court concludes that the documents sought in the above-mentioned discovery

requests—from January 1, 1985 to the present—are likely relevant to the general subject matter

of the action and, as such, discoverable.  The requests are narrowly tailored to the specific safes

---

[9] Docket no. 20 at 4–5.

sold by Defendant that are related to General Yeager's name and/or likeness.  Accordingly, this portion of Plaintiffs' motion is **GRANTED.**  That said, the court makes no ruling regarding the admissibility at trial of the documents to be produced.

In addition, the court finds that Defendant's concerns regarding the production of confidential and proprietary information are unwarranted because Plaintiffs are not in the market of producing safes and, therefore, are not in competition with Defendant.  Nevertheless, Defendant's concerns can be mitigated by having the parties enter into a protective order of confidentiality to govern the use of such documents.  Within fifteen (15) days of the date of this order, the parties shall attempt to stipulate to a protective order and provide the proposed order to the court.  If the parties cannot so stipulate, each party shall submit its proposed protective order to the court and the court will decide the issue.  Within fifteen (15) days after the court issues the protective order, Defendant shall produce the requested documents to Plaintiffs.

### (2)  Request Nos. 57, 60, 63, 66, 69, 72, 78, and 79

In Request Nos. 57, 60, 63, 66, 69, 72, 78, and 79, Plaintiffs request the production of all financial records, sales orders, income and billing statements, and accounting statements from January 1, 1985 to the present, regardless of whether the documents relate to the claims in the present lawsuit.  Defendant asserts that these discovery requests are overly broad and unduly burdensome.

The court agrees with Defendant that these requests are overly broad on their face.  *See PharMerica Long-Term Care, Inc. v. Infinia Healthcare Companies, LLC*, No. 2:09CV600, 2010 WL 3064395, at *4 (D. Utah July 30, 2010); *Richards v. Convergys Corp.*, Nos. 2:05-CV-00790-DAK, 2:05-CV-00812-DAK, 2007 WL 474012, at *4 (D. Utah Feb. 7, 2007).  The requests seek all documentation regarding financial records, sales orders, income and billing statements, and

6

accounting statements within a twenty-seven-year period without providing appropriate subject-matter limitations.  While there might be some relevant information among the vast amount of documents requested, the court finds that such a broad request is unduly burdensome.  Thus, this portion of Plaintiffs' motion is **DENIED.**

## CONCLUSION

In summary, **IT IS HEREBY ORDERED** that Defendant's motion for a protective order[10] is **GRANTED IN PART AND DENIED IN PART** as set forth above.

**IT IS SO ORDERED.**

DATED this 22nd day of May, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[10] *See* docket no. 19.