IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.), an individual,<br><br>Plaintiff,<br><br>v.<br><br>FORT KNOX SECURITY PRODUCTS, INC., a Utah Corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:11-CV-91 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Summary Judgment Regarding Plaintiff's Lack of Standing. For the reasons discussed below, the Court concludes that Plaintiff's remaining claims must be dismissed.

I.  BACKGROUND

On January 21, 2011, Plaintiff General Charles E. "Chuck" Yeager ("Yeager"), along with now-dismissed party PMN II, LLC ("PMN II") brought this action against Defendant Fort Knox Security Products ("Defendant" or "Fort Knox"). Plaintiffs brought various state law claims as well as a claim for violation of the Lanham Act based on Defendant's alleged misuse of Yeager's name and likeness in connection with the sale of Fort Knox products.

The Court ultimately concluded that all of Plaintiffs' claims were barred by the doctrine of laches and entered summary judgment in favor of Defendant. Plaintiffs appealed the judgement of the Court. During that appeal, counsel for Plaintiffs was permitted to withdraw. Because PMN II was a corporate entity, it was required to obtain counsel to continue on appeal. PMN II did not obtain counsel as required and was ultimately dismissed for failure to prosecute.

1

The Tenth Circuit Court of Appeals affirmed the dismissal of the majority of Plaintiffs' claims. However, the court held that two claims—Defendant uploading a promotional video to the internet that referred to the Yeager line of safes and Defendant displaying Yeager's name and likeness at a convention in 2009—fell within the relevant limitations period, and remanded for further proceedings.

On remand, Defendant has filed two Motions for Summary Judgment. In its Renewed Motion for Summary Judgment, Defendant makes many of the same arguments it raised previously. For the reasons set forth below, the Court need not address those arguments. In the instant Motion, Defendant argues that Plaintiff lacks standing to assert his remaining claims. Defendant argues that the proprietary rights at issue were assigned to PMN II, that PMN II's claims were dismissed on the merits, and thus Plaintiff has no claims to assert.

As Plaintiff correctly notes in his Surreply, "[t]he issue of claim preclusion hinges on a determination of what rights, if any, were actually assigned by General Yeager to PMN II."[1] The Court finds it helpful to discuss in detail what Plaintiffs have said on this point.

In the Complaint, it was stated that "General Yeager has assigned and/or is assigning some or all of his rights, title and interest in his name, image and trademarks to PMN. Together, Plaintiffs own all rights, title and interest to the claims asserted against Fort Knox in this action."[2]

In PMN II's Response to Defendant's First Set of Interrogatories, PNM II stated that "on or about January 13, 2011, General Yeager acted to confer certain right, title and interest in his

---

[1] Docket No. 161, at 2.

[2] Docket No. 2 ¶ 11.

name to PMN II, LLC, with limited regard to Fort Knox's use of General Yeager's name or likeness in connection with the promotion or marketing of its safes."[3]  However, in Plaintiffs' Answers to Defendant's Second Set of Interrogatories, Plaintiffs stated "that Gen. Yeager has not assigned any proprietary rights in his 'name, image and trademark' to PMN II, LLC."[4]

Based upon this contradictory statement, and a lack of knowledge of the assignment on the part of General Yeager, Defendant previously moved for summary judgment arguing that PMN II lacked standing.  In response, Plaintiffs argued PMN II did have standing because "General Yeager assigned all interests and rights in his image as it relates to safe products, and/or filing cabinets to PMN."[5]  Plaintiffs provided the Declaration of Victoria Yeager to support this argument.  Mrs. Yeager stated, under penalty of perjury, that "[o]n January 13, 2011, General Yeager verbally assigned and transferred to PMN all interests and rights in his image as it related to safes, safe products, and/or filing cabinets."

To address the discrepancy between these various statements, Ms. Yeager provided the following explanation:

> Interrogatory No. 5 asked me to state the date General Yeager assigned his rights, title, and interest in his name, image, and trademark to PMN.  General Yeager had not assigned his rights in his name and trademark to PMN, so based on the advice of counsel, I answered that no such assignment had been made.  Had the interrogatory asked the date on which General Yeager assigned his rights to PMN solely as they pertained to his image as it related to safes, safe products, and/or filing cabinets, I would have responded with the date of January 13, 2011.[6]

---

[3] Docket No. 149 Ex. A, at 4.

[4] Docket No. 71, at 6.

[5] Docket No. 72, at 3.

[6] Docket No. 73 Ex. A, ¶ 9.

The Court ultimately declined to dismiss PMN II for lack of standing, finding that there was some evidence that PMN II had an interest in General Yeager's proprietary rights. That ruling was not appealed.

On remand, Defendant now moves for summary judgment based on the assignment of rights to PMN II. In the instant Motion, Defendant states the following as undisputed facts:

> g. On January 13, 2011, General Yeager assigned all interests and rights in his image as it relates to safes, safe products, and/or filing cabinets to PMN II.
> h. On that same date, Plaintiff "acted to confer certain right, title and interest to his name to PMN II, LLC, with limited regard to Fort Knox's use of General Yeager's name or likeness in connection with the promotion or marketing of its [safes].[7]

Based upon this assignment of rights, Defendant argues that PMN II, not General Yeager, has standing to pursue the remaining claims. As a result, Defendant seeks summary judgment.

In response to Defendant's Motion, Plaintiff continues to assert that he assigned certain rights to PMN II. Importantly, Plaintiff does not dispute either fact listed above:

> *g. On January 13, 2011, General Yeager assigned all interests and rights in his image as it relates to safes, safe products, and/or filing cabinets to PMN II.*
> RESPONSE: Not disputed. General Yeager notes, however, that the assignment did not include rights to use of his name.
> *h. On that same date, Plaintiff "acted to confer certain right, title and interest to his name to PMN II, LLC, with limited regard to Fort Knox's use of General Yeager's name or likeness in connection with the promotion or marketing of its dates [sic: should be "safes"]."*
> RESPONSE: Not disputed with respect to safes. General Yeager notes, however, that the assignment was limited and only conferred "certain" rights, with "limited" regard to the promotion or marketing of safes. There is no evidence that General Yeager transferred all rights to PMN II, Inc.[8]

---

[7] Docket No. 149, at 4 (quoting *Id.* Ex. A, at 4).

[8] Docket No. 155, at 3–4.

Thus, as of the time Plaintiff responded to Plaintiff's Motion, the parties were in agreement that, shortly before instituting this action, Plaintiff Yeager had assigned all interests and rights in his image as it relates to safes, safe products, and/or filing cabinets to PMN II, and had conferred certain right, title, and interest to his name to PMN II with respect to safes.

In responding to Defendant's Motions for Summary Judgment, Plaintiff also provided an Assignment of Interest dated June 22, 2015 (the "Assignment") between PMN II and General Yeager.[9] In an introductory clause of the Assignment, PMN II and General Yeager stated:

> Charles E. Yeager may have orally assigned to PMN II, LLC, his rights and interests to the use of his image and endorsement to promote the business and products that are classified as safes, safe products, and/or filing cabinets . . . [and] the parties now desire to memorialize the return of any previously assigned interests and rights to Charles E. Yeager.[10]

The Assignment purported to reassign those rights back to General Yeager. The Assignment included "all claims and causes of action against Fort Knox" and was effective as of May 1, 2014, the date counsel for Plaintiffs was allowed to withdraw on appeal and prior to the dismissal of PMN II.

Based upon the Assignment, Plaintiff argues that he continued to have standing. In Defendant's Reply, Defendant argued that Plaintiff's claims were barred by claim preclusion. Defendant reasoned that because PMN II owned the rights asserted by Plaintiff and because PMN II was previously dismissed for failure to prosecute, Plaintiff's claims were barred.

---

[9] Docket No. 154 Ex. 4.

[10] *Id.*

5

Because this issue was not clearly presented in the earlier briefing, the Court allowed Plaintiff to submit a Surreply.

In his Surreply, Plaintiff argues for the first time that there was no assignment of rights from Yeager to PMN II. "Plaintiff now concedes that no valid assignment from General Yeager to PMN II occurred."[11] Plaintiff maintains that he has standing to pursue the remaining claims against Defendant.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The movant, asserting there is no genuine dispute about material facts, must support his assertion "by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that . . . an adverse party cannot produce admissible evidence to support the fact."[13]

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."[14] Federal Rule of Civil Procedure 56 requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the

---

[11] Docket No. 161, at 3.

[12] Fed. R. Civ. P. 56(a).

[13] Fed. R. Civ. P. 56(c).

[14] *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

event of a trial from which a rational trier of fact could find for the nomovant."[15]  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[16]

In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[17]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[18]

### III.  DISCUSSION

Defendant argues that summary judgment is appropriate because Plaintiff Yeager lacks the ability to pursue the remaining claims.  Defendant argues that Yeager transferred the rights to his name and image to PMN II.  Since the two remaining claims involve either the use of Plaintiff's name or image and since PMN II was dismissed on appeal, Defendant argues that Plaintiff cannot assert the remaining claims.

Resolution of this Motion requires consideration of three interrelated issues: (1) what rights, if any, did General Yeager transfer to PMN II; (2) what effect, if any, does the dismissal of PMN II on appeal have on the resolution of the remaining claims; and (3) what is the effect of the Assignment.

---

[15] *Adler v. WalMart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted).

[16] *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

[17] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

As to the first issue, until recently, Plaintiff's position remained fairly consistent. Plaintiff had always contended that he transferred certain rights in his name and likeness to PMN II prior to the commencement of this litigation. The Court previously ruled that PMN II had an interest in Yeager's proprietary rights. And, until the filing of the Surreply, the parties were in agreement that Plaintiff Yeager had assigned all interests and rights in his image as it relates to safes, safe products, and/or filing cabinets to PMN II, and had conferred certain right, title, and interest to his name to PMN II with respect to safes.

In his Surreply, for the first time ever in this litigation and without any evidentiary support, Plaintiff states that there was no valid assignment from General Yeager to PMN II. Plaintiff purports to "concede[] what Defendant has always maintained, namely, that there was no valid assignment to PMN II."[19]

The Court cannot accept this conclusory, unsupported statement. Not only does it contradict nearly every statement Plaintiffs have made on this issue, but it also conflicts with the evidence presented by Plaintiffs. If the Court were to accept this statement, the Court would have no other option than to conclude that Mrs. Yeager committed perjury and that Plaintiff's former and current counsel have repeatedly advanced improper and unsupported arguments before the Court. The Court is disinclined to believe that all of these individuals would engage in such unprofessional, unethical, and perhaps illegal behavior. Therefore, the Court will disregard this purported concession and proceed on the evidence set forth above.

Considering that evidence, the resolution of this issue is rather simple. The undisputed evidence shows that General Yeager assigned all interests and rights in his image as it relates to

---

[19] Docket No. 161, at 4.

8

safes, safe products, and/or filing cabinets to PMN II, and had conferred certain right, title, and interest to his name to PMN II with respect to safes.  Because the remaining claims involve the use of Yeager's name and image in the promotion of Defendant's safes, the Court finds that PMN II, not Yeager, owned the proprietary rights at issue in this case and it alone had the authority to bring the claims at issue.

The next issue the Court must address is the effect of PMN II's dismissal.  As set forth above, PMN II was dismissed on appeal for failure to prosecute.  Dismissal for failure to prosecute operates as a final judgment on the merits.[20]  "Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action."[21]

"An assignee is usually considered in privity with the assignor."[22]  Here, Yeager assigned certain rights to PMN II and PMN II purported to reassign those rights to Yeager.  Based upon these assignments, the Court finds that PMN II and Yeager are in privity.  Just as PMN II could not attempt to reassert those dismissed claims, Yeager cannot assert those claims possessed by PMN II at the time of PMN II's dismissal.

---

[20] *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits."); s*ee also* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

[21] *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014) (quotation marks omitted).

[22] *Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 82 (1st Cir. 1986).

PMN II cannot avoid this result by attempting to reassign its claims to Yeager.[23] Plaintiff argues that the Assignment of rights from PMN II is sufficient to withstand summary judgment. However, an assignee stands in the shoes of the assignor and cannot stand in a better position than the assignor.[24] At the time of the Assignment, PMN II's claims were adjudicated on the merits. Thus, PMN II could only assign those adjudicated claims and General Yeager gained nothing more than these extinguished claims as a result of the Assignment. The fact that the Assignment contains an effective date of May 1, 2014, does not alter this conclusion. An "assignee's rights are the same as those of the assignor at the time of the assignment."[25] At the time of the Assignment, PMN II's claims were adjudicated and it could only assign those adjudicated claims to Yeager. General Yeager can stand in no better position than PMN II and has failed to provide anything suggesting that the Assignment acted to resurrect those adjudicated claims. The cases cited by Plaintiff are readily distinguishable because they do not involve adjudicated claims.

In a final attempt to avoid summary judgment, Plaintiff argues that he has always retained some rights to his name and likeness and the retention of those rights should allow him to proceed. Plaintiff is correct that qualifying language has been used throughout this case when discussing the assignment of General Yeager's proprietary rights. Despite having multiple

---

[23] *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000).

[24] *Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1003 (Utah 2010).

[25] *Stateline Steel Erectors, Inc. v. Shields*, 837 A.2d 285, 289 (N.H. 2003); *see also Amboy Nat'l Bank v. Generali-U.S. Branch*, 930 F. Supp. 1053, 1059 (D. N.J. 1996) ("[A]n assignor can only assign the rights possessed at the time of assignment.") *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112 (Mo. 2010) ("The only rights or interests an assignee acquires are those the assignor had at the time the assignment was made."); *Herbert v. Jarvis & Rice & White Ins., Inc.*, 365 A.2d 271, 273 (Vt. 1976) (An assignee succeeds "to such rights as were possessed by the assignor at the time of the assignment.").

opportunities to do so, Plaintiff has never clarified what rights he allegedly retained. Indeed, during his deposition, General Yeager had no personal knowledge of what rights, if any, were transferred to PMN II.[26] Plaintiff cannot avoid summary judgment simply by stating, without evidentiary support, that he did not transfer all of his rights. Something more is required. Plaintiff has failed to state what rights he retained or how those retained rights pertain to his remaining claims.

Moreover, this argument is not persuasive when considering the nature of the remaining claims and the undisputed facts concerning the rights General Yeager assigned to PMN II. The remaining claims concern the use of General Yeager's name and image in the promotion of Defendant's safes. It is undisputed that General Yeager assigned all interests and rights in his image as it relates to safes, safe products, and/or filing cabinets to PMN II, and conferred certain right, title and interest to his name to PMN II with respect to safes. It is difficult to imagine what rights General Yeager retained that would provide him the ability to pursue the remaining claims and he has done nothing to clarify this point. Without additional evidence, Plaintiff cannot survive summary judgment and his remaining claims must be dismissed.

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 149) is GRANTED. It is further

OREDERED that Defendant's Motion for Leave to File Surreply (Docket No. 162) is DENIED. It is further

---

[26] Docket No. 70 Ex. D, at 21.

ORDERED that Defendant's Renewed Motion for Summary Judgment (Docket No. 148) is DENIED AS MOOT.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff on Plaintiff's remaining claims and close this case forthwith.

DATED this 14th day of September, 2015.

                BY THE COURT:

                _____
                Ted Stewart
                United States District Judge